UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SETH GOLDSTEIN,

                            Plaintiff,

  -against-

GABBIT, LLC,

                            Defendant.

**VERIFIED COMPLAINT**

Civil Action No. 1:25-cv-318 (GTS/DJS)

_____

The Plaintiff, Seth Goldstein, by and through his attorneys, Luibrand Law Firm, PLLC (Kevin A. Luibrand, of counsel), as and for a verified complaint against the Defendant, states and alleges as follows:

## BACKGROUND AND JURISDICTION

1. This is an action at law where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

2. This Court has jurisdiction of this case under Title 28 U.S.C. § 1332.

## PARTIES

3. Plaintiff Seth Goldstein (hereinafter referred to as "Plaintiff") is a citizen of the United States of America and, at the time of filing of this complaint, a resident of Schenectady County in the State of New York.

4. Defendant Gabbit, LLC (hereinafter referred to as "Gabbit"), is a limited liability company duly incorporated under the laws of the State of Missouri with its principal place of

1

business located at 9415 Dielman Rock Island Industrial Drive in the City of Olivette, County of St. Louis, State of Missouri, 63132.

## FACTS

5. Plaintiff was hired as a Systems Administrator by the Town of Niskayuna (hereinafter referred to as the "Town") in February 2021.

6. In 2022, the Town determined that it wanted a new telephone system, and set up a committee (the "Town Committee") of interested parties to assess the needs and type of new telephone system, which Town Committee was comprised of town officials.

7. In 2022, the Town hired the company Fluent Voice (hereinafter referred to as "Fluent") to create a new telephone system for the Town.

8. Kayla Deats (hereinafter referred to as "Deats") was the Chief Project Manager for Fluent as related to the Town's new telephone system, and Deats had the responsibilities of gathering all of the user data Fluent obtained from the Town, having Fluent build the telephone system for the Town, and on-boarding customers and deploying systems for the telephone system.

9. Deats was designated by Fluent as the person to communicate with the Town on the telephone system setup.

10. In technical meetings between the Town and Deats, leading up to the creation of the telephone system for the Town, Deats asked for and was provided by the Town information, including the Police Department information, to determine the Town's requirements with respect to recording telephone calls.

11. Plaintiff was the contact person for the Town Committee who gave to Fluent all of the user data, number of users, telephone locations and information pertaining to the Town's telephone requirements.

12. Once the materials were provided by Plaintiff to Deats, Deats had the responsibility to take the information and, working with Fluent's engineer, create the actual telephone system for the Town.

13. During the setup of the system, Plaintiff communicated to Deats as Gabbit's agent the Town's decision that the Police Department telephone calls were to be recorded, and that no other Town telephones were to be recorded.

14. In July 2022, before the lines were activated by Fluent, Fluent was acquired by Defendant Gabbit, which is a technology company that provides telephone services based from St. Louis, Missouri.

15. Defendant Gabbit purchased from Fluent the Fluent customers only, including the Town.

16. Upon information and belief, Niskayuna was the first municipality handled by Gabbit for the installation of telephone systems.

17. After Gabbit purchased Fluent, Deats continued on the account on behalf of Gabbit with the Town and was the only person hired by Gabbit from Fluent.

18. In July 2022, after the acquisition by Gabbit of Fluent's customers, Deats notified Gabbit that she was leaving Gabbit's employment, and there was a transition period where she transitioned the Town account to others at Gabbit.

19. Deats spoke with the Senior Network Engineer for Gabbit, Jason Taylor (hereinafter referred to as "Taylor"), who had the responsibility for working on the setup and initiation of the Town telephone system on behalf of Gabbit.

20. Taylor worked in St. Louis, Missouri, and Plaintiff never had any communication with Gabbit's Taylor, and only communicated with Gabbit through Deats.

21. Gabbit's Deats informed Gabbit's Taylor before Deats left Gabbit that in accordance with Plaintiff's directive on behalf of the Town, the telephone system should be turned on to record only the Police Department telephone calls.

22. Gabbit co-workers informed Deats that setting up the Town telephone system was rushed on Gabbit's end.

23. The Gabbit representative setting up the Town telephone system told Deats that he was just going to turn it all on, meaning record all calls in the town's Gabbit system, to which Deats responded that only the Police Department should be turned on to record.

24. In July 2022, Deats learned that her directions were not being followed by Gabbit and that all Town telephone calls were being recorded by Gabbit.

25. Deats never told Plaintiff or anyone at the Town that Gabbit improperly set up the system to record all telephone calls.

26. Plaintiff was never informed by Gabbit and never knew nor had reason to believe that Gabbit was recording all town telephone calls and presumed that only police calls were being recorded pursuant to his directions.

27. In April 2024, the town learned that the telephone lines other than the Police Department were being recorded, and the Town officials immediately suspended Plaintiff, blaming Plaintiff for the recordings by Gabbit.

28. The Town hired John Clark (hereinafter referred to as "Clark) to determine how it was that all Town calls were recorded.

29. Clark spoke to Gabbit agent Eric Scher (hereinafter referred to as "Scher"), who was a vice president and counsel for Gabbit.

30. Scher was an agent of and acting on behalf of Gabbit.

31. At 3:13 pm on June 18, 2024, Scher emailed Clark knowing that Clark was investigating who had wrongly set up the Town recording system, and Scher blamed Plaintiff, stating:

> <u>Seth Goldstein, upon initial setup of the Customer's system, requested that call recording be turned on for the Town of Niskayuna for all extensions. When call recording is turned on, call recordings are available directly through the customer portal for up to 3 months. This is the system default setting.</u> Mr. Goldstein, however, requested that all call recordings for the Town of Niskayuna be made available for up to 1 year. Gabbit agreed to archive the Customer's call recordings for up to 1 year (at no additional cost to the Customer), and such recordings would be made available to the Customer upon written request. In other words, after 3 months, the Customer would not be able to directly access the recordings through the portal, but could request the recordings from Gabbit in writing. After call recording is turned on, Customers have the option at any time to turn off call recording for individual users and/or on a system-wide basis. <u>As of today, only the police department extensions are set to record calls (as directed by the Customer)</u>. . . . <u>Again, call recording was requested by Mr. Goldstein and made operational upon installation of the Customer's system</u>. . . .

(emphasis added)

32.     The above statement is false and defamatory, and was made with malice.

33.     At the time Defendant Gabbit published the defamatory matter quoted above, Gabbit knew that it was false, and published said statement with reckless disregard of whether it was true or not.

34.     In publishing this false and defamatory statement, Defendant Gabbit was motivated by actual malice, and wrongfully and willfully intended by this publication to injure Plaintiff so as to avoid responsibility falling on Gabbit for the improper recording of telephone calls at the town.

35.     Plaintiff, as a result of the publication of this false statement by Defendant Gabbit, was suspended from his job with the Town without pay, was publicly defamed in numerous news media, was forced to pay attorneys' fees and legal fees to defend himself against the misconduct charges, and has sustained damage to his professional reputation.

36.     Plaintiff, as a result of the publication of this false statement by Defendant Gabbit, has sustained damage to his character and reputation, lost income, and has suffered mental anguish and emotional distress.

37.     On January 14, 2025, the Times Union published an article in its paper and on its online website in which it was reported that Ryan Hawkins, a spokesman for Gabbit stated that "the town had requested the recording feature for all incoming and outgoing phone calls be activated and be kept on the server for a year instead of the standard three months."

38.     On February 27, 2025, the Times Union published an article in its paper and on its online website in which Gabbit was quoted as stating that "Gabbit, LLC, which has provided phone services to the town since 2022, has steadfastly told the Times Union that the town had requested

the recording feature for all incoming and outgoing phone calls be activated and be kept on the server for a year instead of the standard three months."

39. The February 27, 2025 article also quoted Town Attorney Alaina Finan, who stated "…Gabbit is telling us that he [Claimant] requested they [the recording functions] be turned on, and he's solely responsible for the phone systems for the town of Niskayuna. So, if that wasn't malicious, at the very least it was gross negligence, and so the charges were for both misconduct and incompetence…"

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT, PLAINTIFF STATES AND ALLEGES THE FOLLOWING:**

*Defamation*

40. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs of this complaint designated "1" through "39", inclusive with the same force and effect as if hereinafter set forth in full.

41. The published false statements by Defendant Gabbit were made with intent to harm Plaintiff and with actual malice.

42. The publication by Defendant Gabbit of the within false statements has caused and will continue to cause Plaintiff irreparable injuries for which there are no adequate legal remedies.

43. As a consequence of Defendant Gabbit's defamation, Plaintiff has sustained damage to his character and professional reputation, has been deprived of income from employment, and has suffered mental anguish and emotional distress.

44.     As a result of the false statement published by Defendant Gabbit, Plaintiff has been damaged and is entitled to compensatory and punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANT, PLAINTIFF STATES
AND ALLEGES THE FOLLOWING:**

*Defamation per se*

45.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs of this complaint designated "1" through 44", inclusive with the same force and effect as if hereinafter set forth in full.

46.     The within false statement by Defendant Gabbit constitutes defamation *per se* as it intends to injury Plaintiff in his profession and accuses Plaintiff of criminal conduct.

47.     The published false statements by Defendant Gabbit were made with intent to harm Plaintiff and with actual malice.

48.     The publication by Defendant Gabbit of the within false statements have caused and will continue to cause Plaintiff irreparable injuries for which there are no adequate legal remedies.

49.     As a consequence of Defendant Gabbit's defamation, Plaintiff has sustained damage to his character and professional reputation, has been deprived of income from employment resulting from Defendant Gabbit's defamation, and has suffered mental anguish and emotional distress.

50.     As a result of the false statements published by Defendant Gabbit, Plaintiff has been damaged and is entitled to compensatory and punitive damages.

WHEREFORE, Plaintiff demands a judgment for $3,000,000.00 against Defendant for compensatory damages and punitive damages, together with an award of attorneys' fees, and any such other and further relief that this Court may deem just, proper and equitable.

Plaintiff hereby demands a jury trial with respect to both liability and damages.

Dated: March 11, 2025                                                        LUIBRAND LAW FIRM, PLLC

*Kevin A. Luibrand*

Kevin A. Luibrand, Esq.
Elyse Harmon, Esq. (of counsel)
*Attorneys for Plaintiff*
Office and Post Office Address:
950 New Loudon Road
Suite 270
Latham, New York  12110
Telephone: (518) 783-1100
Facsimile: (518)783-1901

## ***VERIFICATION***

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF ALBANY         )

SETH GOLDSTEIN, being duly sworn, states that he is the Petitioner in this action and that the forgoing **Complaint** is true to his knowledge, except as to the matters therein stated on information and belief and, as to those matters, he believes them to be true.

_____
SETH GOLDSTEIN

Sworn to before me this 7th
day of March, 2025.

_____
Notary Public

JENNIFER SETFORD
Notary Public, State of New York
Qualified in Albany County
No. 01SE6183360
Commission Expires Oct. 02, 20 26