UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SETH GOLDSTEIN,

                              Plaintiff,

v.                                                                 1:25-CV-0318
                                                                     (GTS/DJS)

GABBIT, LLC,

                              Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

LUIBRAND LAW FIRM, PLLC                 KEVIN A. LUIBRAND, ESQ.
  Counsel for Plaintiff
950 New Loudon Road
Latham, NY 12110

TRAUB LIEBERMAN STRAUS                LISA L. SHREWSBERRY, ESQ.
 & SHREWSBERRY, LLP
  Counsel for Defendant
Mid-Westchester Executive Park
7 Skyline Drive
Hawthorne, NY 10532

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this defamation action filed by Seth Goldstein ("Plaintiff") against Gabbit, LLC ("Defendant"), is Defendant's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 12, 13.) For the reasons set forth below, Defendant's motion is granted.

I.     RELEVANT BACKGROUND

    A.     **Plaintiff's Amended Complaint**

Generally, in his Amended Complaint, Plaintiff asserts two claims: (1) a claim of defamation; and (2) a claim of defamation *per se*. (Dkt. No. 8.) Both of these claims are based on alleged statements made by representatives of Defendant in an email and two print articles in the *Albany Times Union* in which those representatives stated that either Plaintiff specifically or the Town of Niskayuna had requested that call recordings should be turned on for all phone extensions (rather than only for phones in the Police Department) as part of the phone system Defendant was constructing for the Town. (*Id.*) Plaintiff alleges that Defendant's statement to that effect is false because he specifically told Defendant that the call recording was to be turned on only for phones in the Police Department, and that Defendant's statements resulted in him being first suspended, and then later fired, from his job as the Town's Systems Administrator. (*Id.*)

### B. Parties' Briefing on Defendant's Motion to Dismiss

#### 1. Defendant's Memorandum of Law

Generally, in its motion, Defendant makes four arguments. (Dkt. No. 13, Attach. 5.) First, Defendant argues that, to the extent Plaintiff's defamation claims arise from statements made in the email communication between Eric Scher and John Clark (which was shared with the Town's attorney), such statements are protected by the common interest privilege. (*Id.* at 17-19.) More specifically, Defendant argues that the relevant statement was made in the context of Mr. Scher answering questions posed by the investigator hired by the Town related to the unwanted recording of the Town's phone lines by Defendant Gabbit's system, a business topic upon which all the parties involved in that exchange had a common interest, and that Plaintiff

2

has not alleged facts to plausibly suggest that Mr. Scher (and by extension Defendant Gabbit) acted with actual malice in the making of those statements.  (*Id.*)

Second, Defendant argues that, to the extent that Plaintiff's claims arise from the cited articles printed by the *Albany Times Union*, those claims are not based on any defamatory statement made by Defendant Gabbit.  (*Id.* at 20-21.)  More specifically, Defendant argues that a fair reading of the statements attributed to Defendant Gabbit (through its representatives) in those articles leads to the conclusion that they are not defamatory because (a) the first article (from January 14, 2025) gave a reasonable reader the overall impression that Defendant Gabbit was responsible for the phone system issue, and contained only a single statement from Defendant Gabbit setting forth its position on the issue (without even naming Plaintiff), and (b) the second article (from February 27, 2025) gave a reasonable reader the overall impression that Plaintiff was terminated from his position as System Administrator because he had been held accountable as the person responsible for the phone system in general, and contained only a single statement from Defendant Gabbit reiterating that it had followed directions from the Town to activate the recording feature (again without naming Plaintiff specifically as the source of that direction).  (*Id.*)

Third, Defendant argues that Plaintiff has also failed to state a claim for defamation because he has not alleged facts plausibly suggesting the existence of special damages.  (*Id.* at 22-23.)  More specifically, Defendant argues that the damages alleged by Plaintiff consist of legal fees related to defending himself in the disciplinary hearing, lost income in excess of $200,000, and unspecified compensatory and punitive damages, and that he has not alleged and cannot allege any direct connection between the alleged damages and the defamatory statements

3

because he was suspended from his position before any statement was made and he has not alleged that any statement by Defendant Gabbit caused him to be unable to find employment. (*Id.*)

Fourth, Defendant argues that Plaintiff has failed to state a claim of defamation *per se* because the alleged statements neither accuse Plaintiff of any serious crime nor in any way suggest that Plaintiff is incompetent or dishonest or otherwise unable to perform his chosen profession, and he has not plausibly alleged that those statements actually injured him in his profession. (*Id.* at 24-25.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff makes four arguments. (Dkt. No. 15.) First, Plaintiff argues that the statements made in Mr. Scher's email are not protected by the common interest privilege because Plaintiff has plausibly alleged that Defendant acted with malice in making those statements by alleging that Defendant was aware of the truth and recklessly disregarded it. (*Id.* at 8-11.)

Second, Plaintiff argues that Defendant's statements to the media in the *Albany Times Union* articles constitute defamation because a fair reading of those articles generally places the blame on Plaintiff as a result of Defendant's untrue statements. (*Id.* at 11-13.)

Third, Plaintiff argues that he has alleged the existence of special damages sufficient to state a claim of defamation because he has alleged that the relevant defamatory statements were the basis for his disciplinary hearing, the disciplinary actions taken against him, and the ultimate termination of his employment, which has caused damage to his character and reputation, lost income, lost benefits, legal fees, mental anguish, and emotional distress. (*Id.* at 14-16.)

4

Fourth, Plaintiff argues that he has stated a cause of action for defamation *per se* because the relevant statements not only tend to injure him in his profession given that they plausibly suggest that Plaintiff committed misconduct and was engaged in dishonest behavior, but also accuse him of committing a serious crime, namely wiretapping pursuant to N.Y. Pen. L. § 250.05. (*Id.* at 16-21.)

### 3. Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant makes four arguments. (Dkt. No. 16.) First, Defendant repeats its argument that Plaintiff's claims based on the statements made in the email are barred by the common interest privilege. (*Id.* at 6-8.) More specifically, Defendant notes that Plaintiff does not challenge that the relevant statements are privileged but rather asserts only that he has plausibly alleged actual malice to overcome that privilege. (*Id.*) Defendant argues that Plaintiff has, however, not provided any sufficient factual allegations plausibly suggesting actual malice, only a conclusory assertion that Defendant Gabbit was attempting to avoid blame for the situation. (*Id.*)

Second, Defendant argues that Plaintiff's claims arising from the articles must be dismissed because the statements quoted therein are not defamatory given the fact that both articles contain only a single statement from Defendant Gabbit stating their position without ever naming Plaintiff. (*Id.* at 8-9.)

Third, Defendant argues that Plaintiff has not alleged facts plausibly suggesting his entitlement to special damages because (a) all he has done is estimate his loss without providing allegations regarding actual losses, and (b) he has not sufficiently alleged that there is a direct connection between those purported losses and Defendant Gabbit's statements. (*Id.* at 10-11.)

5

Fourth, Defendant argues that Plaintiff has not stated a claim for defamation *per se* for the following reasons: (a) the relevant statements never accuse Plaintiff of any crime, much less wiretapping as he now asserts; and (b) the relevant statements do not cause injury to him in his profession, because they are limited to Defendant's understanding of a single, discrete aspect of one decision Plaintiff made in the course of his employment that can hardly be interpreted as suggesting he is incompetent or dishonest, and because Plaintiff has not alleged how his reputation has actually been harmed as a result of those statements. (*Id*. at 11-13.)

## II.    GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

6

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

7

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

8

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.")

9

### III.     ANALYSIS

#### A.     Whether Plaintiff's Defamation Claims Based on the Email of June 18, 2024, Are Barred By the Common Interest Privilege

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendant's memoranda of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendant's reasons).

"'A communication made by one person to another upon a subject in which both have an interest is protected by a qualified privilege.'" *Ferrara v. Esquire Back*, 153 A.D.3d 671, 673 (N.Y. App. Div. 2d. Dept. 2017) (quoting *Stillman v. Ford*, 22 N.Y.2d 48, 53 [N.Y. 1968]); *accord, Carroll v. Trump*, 151 F.4th 50, 75 (2d Cir. 2025). "However, this 'common-interest privilege' may be overcome by a showing of malice." *Ferrara*, 153 A.D.3d at 673 (citing *Colantonio v. Mercy Med. Ctr.*, 115 A.D.3d 902, 982 [N.Y. App. Div. 2d Dept. 2014]). "'To establish the 'malice' necessary to defeat the privilege, the plaintiff may show either common-law malice, i.e., 'spite or ill will,' or show 'actual malice,' i.e., knowledge of falsehood of the statement or reckless disregard for the truth.'" *Ferrara*, 153 A.D.3d at 673 (quoting *Diorio v.*

---

[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Ossining Union Free Sch. Dist.*, 96 A.D.3d 710, 712 [N.Y. App. Div. 2d Dept. 2012]). Where a plaintiff relies on common-law malice to defeat such privilege, he or she must sufficiently allege that "'it was the one and only cause for the publication.'" *Carroll*, 151 F.4th at 76 (quoting *Liberman v. Gelstein*, 90 N.Y.2d 429, 439 [N.Y. 1992]). As to actual malice, a plaintiff "must demonstrate that the statements were made with a high degree of awareness of their probable falsity." *Halpin v. Banks*, 231 A.D.3d 1337, 1341 (N.Y. App. Div. 3rd Dept. 2024) (citing *Grier v. Johnson*, 232 A.D.2d 846, [N.Y. App. Div. 3rd Dept. 1996]); *accord Gandhi v. New York State Unified Court Sys.*, 20-CV-0120, 2024 WL 365119, at *4 (N.D.N.Y. Jan. 31, 2024) (Kahn, J.). Moreover, for actual malice to exist, "the critical question is the state of mind of those responsible for the publication." *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 20 (S.D.N.Y. 2022) (quoting *Palin v. New York Times Co.*, 940 F.3d 804, 810 [2d Cir. 2019]).

In this case, Plaintiff appears to have conceded that the email constitutes a situation to which the common interest privilege applies, given that he has not presented any arguments to the contrary on that point and instead argues only that such privilege does not bar his claims because he has alleged that Defendant acted with malice. (Dkt. No. 15, at 8-9.) *See also* N.D.N.Y. L.R. 7.1(a)(3) (deeming unopposed arguments as having been "consent[ed] to").

As a threshold matter, the Court finds that Plaintiff has not alleged facts plausibly suggesting the existence of common-law malice. Rather, he alleges that Defendant acted with malice only because it "was seeking to blame someone other than itself" and because it wanted to "avoid responsibility falling on Gabbit for its improper recording of telephone calls at the town." (Dkt. No. 8, at ¶ 40.) In this regard, Plaintiff's own factual allegations undermine any plausible suggestion of common-law malice because they plausibly suggest that Defendant was

11

not motivated *solely* by some ill will toward or desire to harm Plaintiff, but rather by its own self-interest in avoiding responsibility.

As to actual malice, Plaintiff alleges that Defendant knew that the statements it made were false at the time they were made "because Gabbit had wrongfully set up the system to record calls against the direction from Plaintiff through Deats." (Dkt. No. 8, at ¶ 39.) As stated previously, the relevant statement in the email was made by Mr. Scher, who is noted to be Defendant's Vice President and General Counsel in his email signature.[2] (Dkt. No. 13, Attach. 2.) As a result, Plaintiff must allege facts plausibly suggesting that Mr. Scher specifically acted with actual malice. *See Palin*, 940 F.3d at 810 (noting, in a case in which the plaintiff sued the newspaper that printed the defamatory statement, that "[b]ecause the Times identified Bennett as the author of the editorial, it was his state of mind that was relevant to the actual malice determination"); *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) ("[T]he plaintiff must identify the individual responsible for publication of a statement, and it is that individual that plaintiff must prove acted with actual malice.").

Yet Plaintiff offers no factual allegations plausibly suggesting that Mr. Scher had knowledge that his statement was false or that he acted in a manner that recklessly disregarded the truth. Rather, Plaintiff alleges that, "[d]uring the setup of the system, Plaintiff communicated to Deats [who at the time worked for Fluent Voice, the contractor that had originally been

---

[2]  The Court notes that it may consider this email (which was provided as an exhibit with Defendant's motion) because it is clearly integral to the Complaint given that the allegedly defamatory statement that provides at least part of the basis for Plaintiff's claims was made therein. Furthermore, Plaintiff does not raise a dispute regarding the authenticity or accuracy of the document.

12

retained to create the new system] . . . the Town's decision that the Police Department telephone calls were to be recorded, and that no other Town telephones were to be recorded."[3]  (Dkt. No. 8, at ¶ 13.)  Plaintiff further alleges that, after Fluent was acquired by Defendant in July 2022, Deats (who had been retained by Defendant but chose to leave that employment) informed Defendant's Senior Network Engineer, Jason Taylor, that "in accordance with Plaintiff's directive on behalf of the Town, the telephone system should be turned on to record only the Police Department telephone calls," an instruction Deats repeated after "[t]he Gabbit representative setting up the Town telephone system told Deats that he was just going to turn it all on."  (*Id.* at ¶¶ 18-21, 23.)  Plaintiff acknowledges that he "never had any communication with . . . Taylor, and only communicated with Gabbit through Deats."  (*Id.* at ¶ 20.)

While Plaintiff alleges that Mr. Taylor and potentially another unidentified Gabbit representative who set up the phone system were made aware that Plaintiff had told Ms. Deats that the system should be set up to record only calls to and from the Police Department, he notably does not make any factual allegations that would plausibly suggest that Mr. Scher, as the person responsible for the publication of the statement, was aware of that fact such that his statements represent a knowing falsehood or reckless disregard for the truth.  In particular, there is nothing to plausibly suggest that either of those individuals with whom Ms. Deats had contact (or Ms. Deats herself) ever informed Mr. Scher of Plaintiff's alleged instructions regarding recording.  *See Kitani v. New York City Transit*, 19-CV-1043, 2022 WL 874781, at *12 (S.D.N.Y. Mar. 24, 2022) (dismissing defamation claims based on privilege where the plaintiff

---

[3] Plaintiff alleges as part of this fact that Deats was acting as Defendant's agent at the time of this conversation, but his own factual allegations do not plausibly suggest whether this conversation occurred before or after Fluent was acquired by Defendant.

failed to make any factual allegations to suggest that the defendant who made the statements was aware of the falsity of those statements or that he had serious doubts about their truthfulness). Under these circumstances, Plaintiff has not alleged facts to plausibly suggest that Mr. Scher acted with actual malice in making the relevant statement. He has therefore failed to sufficiently allege facts to overcome the common interest privilege.

For these reasons, Plaintiff's defamation claims based on the email statements made by Mr. Scher must be dismissed.

> B. Whether the Statements Published in the *Albany Times Union* Articles of January 14, 2025, and February 27, 2025, Are Defamatory

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant's memoranda of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendant's reasons).

In addition to being false, "[a] defamatory statement is one that 'exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society.'" *Graham v. UMG Recordings, Inc.*, 25-CV-0399, 2025 WL 2879607, at *4 (S.D.N.Y. Oct. 9, 2020) (quoting *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 690 [S.D.N.Y. 2022]). "In an action to recover damages for defamation, '[t]he issue of whether particular words are defamatory presents a legal issue to be resolved by the court.'" *Greenberg v. Spitzer*, 155 A.D.3d 27, 44 (N.Y. App. Div. 2d Dept. 2017) (quoting *Brach v. Congregation Yetev Lev D'Satmar*, 265 A.D.2d 360, 361 [N.Y. App. Div. 2d Dept. 1999]); *see also Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (N.Y. 1985) ("Whether

14

particular words are defamatory presents a legal question to be resolved by the court in the first instance.").

In assessing whether a statement or publication is defamatory, the Second Circuit has indicated that a court should adhere to the following standards: (1) the court "'must give the disputed language a fair reading in the context of the *publication as a whole*,'" not reading the statement in isolation, but rather "as the average reader would against the 'whole apparent scope and intent' of the writing"; (2) the court should not "'strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous'"; and (3) "'the words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood *by the public to which they are addressed*,'" or, in other words, it is "the meaning reasonably attributable to the intended reader that controls." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (emphasis in original) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373 [N.Y. 1995]; *November v. Time Inc.*, 13 N.Y.2d 175 [N.Y. 1963]); *see also Aronson,* 65 N.Y.2d at 594 ("The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible to a defamatory meaning, they are not actionable and cannot be made so by strained or artificial construction.") (collecting cases).

Relatedly, "[i]n order to establish a prima facie case of defamation, plaintiffs must show that the matter published is 'of and concerning' them." *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y. 3d 82, 86 (N.Y. 2016) (citing *Julian v. Am. Bus. Consultants*, 2 N.Y.2d 1, 17 [N.Y. 1956]). "Although it is not necessary for plaintiffs to be named in the publication, they must plead and prove that the statement referred to them and that a person hearing or reading the

15

statement reasonably could have interpreted it as such." *Three Amigos SJL Rest. Inc.*, 28 N.Y.3d at 86; *see also Elias v. Rolling Stone LLC*, 872 F.3d 97, 104-05 (2d Cir. 2017) (indicating that a statement is of and concerning the plaintiff where "'the reading public acquainted with the parties and the subject' would recognize plaintiff as a person to whom the statement refers") (quoting *Carlucci v. Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883, 885 [N.Y. 1982]).  This is also a question of law for a court to decide.  *Three Amigos SJL Rest. Inc.*, 28 N.Y.3d at 87 (citing *Springer v. Viking Press*, 60 N.Y.2d 916, 917 [N.Y. 1983]); *Elias,* 872 F.3d at 105.

      As indicated earlier, the statements in question were present in articles published by the *Albany Times Union* on January 14, 2025, and February 27, 2025.  More specifically, in the article from January 14, 2025, a spokesman for Defendant, Ryan Hawkins, is noted as having "previously said" that "the town had requested the recording feature for all incoming and outgoing phone calls be activated and be kept on the server for a year instead of the standard three months."  (Dkt. No. 13, Attach. 3, at 5.)  Similarly, in the article from February 27, 2025, it is noted that the Town Attorney reported that "Gabbit is telling us that he requested they be turned on," and that Defendant "has steadfastly told the Times Union that the town had requested the recording feature to all incoming and outgoing phone calls be activated and be kept on a server for a year instead of the standard three months."  (Dkt. No. 13, Attach. 4, at 5-6.)

      As to the article from January 14, 2025, the Court finds that, although the relevant statement within the full context of the article just barely meets the "of and concerning" requirement (in that Mr. Hawkins' reference to the fact that "the town" had requested the recordings is provided alongside facts that Plaintiff, by name, was noted to be subject to a disciplinary hearing related to the phone system recording as well as the implication that he was

16

responsible for that phone system generally), it does not constitute defamation. As Defendant argues, the article as a whole generally focuses on the assertion that *Gabbit* was responsible for improperly turning on the recording of all Town phone lines, with the relevant statement by Mr. Hawkins presented as Defendant's brief counter-explanation for how that occurred.

Similarly, as to the article from February 27, 2025, although again the relevant statements meet the "of and concerning" requirement based on the context in which they are presented, they are not defamatory. While this article focuses less on accusations of fault against Defendant for the phone system recording and more on the fact that Plaintiff's employment was terminated because of those recordings, it certainly does not present a one-sided story, but balances the statements by Mr. Hawkins and the Town's attorney (who, as discussed, relayed that Gabbit had told her that Plaintiff had requested the recording for all lines) with statements by Plaintiff's attorney clearly espousing a perspective that *Defendant* is to blame for the recording being turned on and that Plaintiff's disciplinary hearing was not fairly conducted. (Dkt. No. 13, Attach. 4, at 6-7.) Moreover, the article does not state that Plaintiff's employment was terminated specifically because of the relevant statements made by Defendant's representative, but that the recordings were occurring for two years before the mistake was discovered and that Plaintiff was held "solely responsible for the phone systems for the town of Niskayuna." (Dkt. No. 13, Attach. 4, at 4-9.) The article further includes statements from Plaintiff's attorney that, as already discussed, the disciplinary proceedings were not impartial or fair. (*Id.*)

Construed in the context of each of these articles, the relevant statements would not be interpreted as defamatory by an intended reader of the *Albany Times Union*. Rather, as discussed above, they merely present Defendant's explanation for why the recording was turned on for all

17

Town phone lines as a counter-balance for other explanations that place the blame for that mistake on Defendant, and place those competing explanations within the context of Plaintiff's role as the overseer of the Town's phone system.  Importantly, neither of these articles suggest even implicitly that Mr. Hawkins' version of events is the correct one, nor does the context of the articles attempt to lead the reader to the conclusion that Defendant's statements are true.  As a result, even if Defendant's assertions in these articles that Plaintiff told it to turn on the recording feature for the entire system were determined to be false after a factfinding proceeding, those assertions have not reasonably exposed Plaintiff to the sorts of negative reputational consequences that distinguish a defamatory statement from a merely false one.  For these reasons, Plaintiff's defamation claims based on the statements in the two articles are dismissed.[4]

    **ACCORDINGLY**, it is

    **ORDERED** that Defendant's motion to dismiss (Dkt. Nos. 12, 13) is **GRANTED**.

Dated: January 26, 2026
       Syracuse, New York

*/s/ Glenn T. Suddaby*
Glenn T. Suddaby
U.S. District Judge

---

[4] Because the Court has found that Plaintiff has not stated a claim of defamation as to any of the alleged statements, it will not evaluate the parties' arguments regarding whether Plaintiff has sufficiently pleaded facts plausibly suggesting the existence of special damages or the conditions giving rise to defamation *per se*.